**EXHIBIT B**
**PART 1**

SOUTH JERSEY LEGAL SERVICES, INC.
Douglas Gershuny, Esq., Executive Director
745 Market Street
Camden, New Jersey 08102
LAW OFFICE OF JAMES F. VILLERE, JR.
441 Main Street
Metuchen, New Jersey 08840
(973) 267-0787
Attorneys for Victor and Enoabasi Ukpe
**FILING FEES WAIVED PURSUANT TO R. 1:13-2**
BY: Abigail B. Sullivan, Esq.

| | |
|---|---|
| BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-AB3 | : SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION |
| Plaintiff, | : ATLANTIC COUNTY |
| v. | : DOCKET NO.: F-10209-08 |
| VICTOR and ENOABASI UKPE., | : Civil Action |
| Defendants, | : AMENDED ANSWER, AFFIRMATIVE DEFENSES COUNTERCLAIMS, AND AMENDED THIRD PARTY COMPLAINT |
| VICTOR and ENOABASI UKPE | : |
| Counterclaimants and Third Party Plaintiffs | : |
| v. | : |
| BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-AB3, Defendant on the Counterclaim, and AMERICA'S WHOLESALE LENDER; COUNTRYWIDE HOME LOANS, INC.; | : |

1

MORGAN FUNDING CORPORATION;          :
ROBERT CHILDERS; COUNTRYWIDE        :
HOME LOANS SERVICING LP              :
    Third Party Defendants             :

---

Defendants Victor and Enoabasi Ukpe, (hereinafter "Defendants") residing at 717 South 7th Street, Galloway, Atlantic County, New Jersey, 08205, by way of Answer to the Complaint of Bank of New York as Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2005-AB3 (hereinafter "Plaintiff") state:

## AS TO THE FIRST COUNT

1. Deny.

2. Defendants deny they executed a Purchase Money mortgage to Mortgage Electronic Registration Systems, Inc. Strict proofs are demanded.

3. Admit.

4. Deny.

5. Deny. The mortgagee MERS is not entitled to any payments under the note.

6. Admit.

7. Deny. Mortgagee MERS is not named in the note.

8. Defendants deny that they are in default of any obligation to Plaintiff.

9. Defendants deny that Bank of New York as Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2005-AB3 is a proper plaintiff and demands strict proofs of same.

10. Deny.

    **WHEREFORE**, the Defendants Victor and Enoabasi Ukpe demand judgment dismissing the Plaintiff's Foreclosure Complaint with prejudice, together with attorneys fees and costs.

## AS TO THE SECOND COUNT

2

1.    Deny.

2.    Deny.

3.    Deny.

4.    Deny.

     **WHEREFORE**, the Defendants Victor and Enoabasi Ukpe demand judgment dismissing the Plaintiff's Foreclosure Complaint together with attorneys fees and costs.

## AMENDED AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**Plaintiff failed to comply with the Fair Foreclosure Act**

1.  Plaintiff's Complaint seeks to foreclose upon a "residential mortgage" as defined by the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 et. seq., and therefore Defendants, resident titled owners, are entitled to the protections set forth in the Fair Foreclosure Act.

2.  Plaintiff, its predecessor and/or assignor failed to comply with the Fair Foreclosure Act, N.J.S.A. 2A:50-56, in that Plaintiff failed to provide Defendants with a Notice of Intent to Foreclose in compliance with the requirements of the Fair Foreclosure Act as enumerated in N.J.S.A. 2A:50-56(c);

3.  To the extent that a "Notice of Intent" to Foreclose was served upon Defendants, that Notice was not sent by the entity with the legal authority to foreclose upon Defendants' Mortgage.

     **WHEREFORE**, the Defendants demand judgment dismissing the Plaintiff's Complaint for failure to comply with the Fair Foreclosure Act, together with attorneys fees and costs, and such other relief as the court deems just and equitable.

### SECOND AFFIRMATIVE DEFENSE

**Plaintiff failed to establish its right to bring suit on this Mortgage**

3

1. Plaintiff is an out-of-state corporation not properly registered within the State of New Jersey.

2. Plaintiff is an out-of-state corporation not authorized by law to bring a lawsuit within the State of New Jersey.

3. Plaintiff is not properly licensed to serve New Jersey residents or to bring lawsuits on the loans of New Jersey residents.

4. Plaintiff is not the owner of the alleged purchase money mortgage and lacks the legal authority to foreclose upon Defendants' alleged Mortgage.

5. Based upon the foregoing, Plaintiff's Complaint is barred because Plaintiff has not established its right to foreclose on the alleged purchase money mortgage.

**WHEREFORE,** Defendants demand judgment dismissing Plaintiff's Complaint, for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, together with attorneys fees and costs, and such other relief as this court deems just and equitable.

## THIRD AFFIRMATIVE DEFENSE

**Defendants are entitled to recoupment for violations of New Jersey's Consumer Fraud Act**

1. Plaintiff's predecessors engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise and/or misrepresentations, or alternatively, and in addition, Plaintiff's predecessors engaged in acts of omission, including but not limited to knowing concealment, suppression and omissions of material facts, more fully set forth in the Counterclaims.

2. Plaintiff's predecessors omitted, suppressed, and knowingly concealed the true nature of the mortgage documents to Defendants. In addition, Plaintiff's predecessors used fraud, deception, and misrepresentation to obtain Defendants' signature.

3. The foregoing acts and conduct by Plaintiff's predecessors resulted in Defendants suffering injury.

4. Said conduct constitutes a violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2, et seq., for which Defendants suffered ascertainable loss.

**WHEREFORE,** Defendants demand dismissal of the Plaintiff's Foreclosure Complaint and, recoupment and/or setoff for the costs, fees and interest associated

4

with the mortgages, actual damages, treble damages, punitive and statutory damages, attorneys fees and costs of suit, and such other relief as the Court deems just and equitable.

## FOURTH AFFIRMATIVE DEFENSE

**Defendants are entitled to recoupment for violations of common law fraud.**

1. Plaintiff's predecessors intentionally made false and misleading statements to Defendants and knowingly concealed or suppressed material facts from Defendants, more fully set forth in the Counterclaims.

2. Plaintiff's predecessors made these false and misleading statements to Defendants, and concealed or suppressed material facts from Defendants with the intent to deceive and with the intent that Defendants rely on these representations.

3. Defendants had no choice in controlling the omissions and concealments of Plaintiff's predecessors and Defendants suffered damages.

**WHEREFORE**, Defendants, demands dismissal of the Plaintiff's Complaint, recoupment and/or setoff for the cost, fees and interest associated with the transaction, actual damages, punitive damages, attorneys fees, as well as costs, and such other relief as the Court deems just and equitable.

## FIFTH AFFIRMATIVE DEFENSE

**Defendants are entitled to recoupment for violations of common law unconscionability**

1. Plaintiff's predecessors imposed excessive fees and costs and onerous loan terms that do not follow the standards of the industry.

2. Plaintiff's predecessors' conduct violates the covenant of good faith and fair dealing present in all contracts.

3. Plaintiff's predecessors knew or should have known that Defendants could not afford the loan as they produced income tax returns which showed income insufficient to afford the loan.

4. Furthermore, Plaintiff's predecessors knew or should have known that Defendants' income was insufficient to repay the mortgage. The result was to make it very likely that Defendants would lose the home to foreclosure.

5

5. The conduct of Plaintiff's predecessors conduct constitutes common law unconscionability.

6. Based on the conduct of Plaintiff's predecessors Defendants have suffered damages.

**WHEREFORE**, Defendants demand the dismissal of Plaintiff's Foreclosure Complaint, recoupment and/or setoff for the costs, fees and interest associated with the mortgage, actual damages, punitive damages, attorneys fees, costs of suit, and such other relief as the Court deems just and equitable.

## SIXTH AFFIRMATIVE DEFENSE

### Invalid Mortgage - No Meeting of the Minds

1. Defendants were not adequately informed nor aware of the material terms of the mortgage contract at issue in this suit prior to the consummation of the transaction.

2. Defendants did not understand the material terms of the mortgage contract at issue in this suit prior to the consummation of the transaction.

**WHEREFORE**, Defendants demand judgment dismissing Plaintiff's Complaint together with attorneys fees and costs of suit, and such other relief as this court deems just and equitable.

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claim is barred for lack of standing. The Plaintiff is not the real party in interest in this lawsuit.

## EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff's claim is barred because of the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claim is barred because any alleged loss to the Plaintiff was caused by the negligence of its predecessors or the negligence of its predecessors' agents over which the Defendants have no control.

## TENTH AFFIRMATIVE DEFENSE

6

The Plaintiff's claim is barred because any alleged loss to the Plaintiff is caused by the fraud of its predecessors or the fraud of its predecessors' agents over which the Defendants have no control.

### ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's claim is barred because of the failure to mitigate damages.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part because of the statute of frauds.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not a holder of Defendants' Mortgage Note

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not a holder in due course of Defendants' Mortgage Note.

### FIFTHTEENTH AFFIRMATIVE DEFENSE

1. Plaintiff is not an innocent purchaser of Defendants' mortgage note.

2. Because of Plaintiff's close connection with Third-Party Defendants Countrywide Home Loans, Inc. and America's Wholesale Lender, Plaintiff had reason to know it was purchasing a predatory loan.

3. On information and belief, Plaintiff is a passive trust special purpose vehicle created by businesses closely associated with Third-Party Defendants Countrywide Home Loans, Inc. and America's Wholesale Lender and Countrywide Home Loans Servicing LP.

4. Plaintiff received the trust fund that allegedly included Defendants' mortgage loan file by conveyance of a trust fund from a Depositor, CWABS, Inc.

5. CWABS, Inc. is another special purpose vehicle created or controlled by Third-Party Defendant Countrywide Home Loans, or related business entities.

6. Countrywide Home Loans had a thorough knowledge of the nature and method of operation of Third Party Defendants America's Wholesale Lender and Morgan Funding Corporation's businesses, and exercised extensive control over them.

7

7. On information and belief, Countrywide Home Loans played a central role in the structuring the financial transactions sold to the trust, including soliciting the purchase of loans, setting criteria for loans, making representations and warranties about the loans, financing the loans, fashioning and supplying of the form of mortgage and note used by Countrywide Home Loans and America's Wholesale Lender, and in setting the terms of the mortgage transaction, which were designed to put the Defendants into a predatory loan while permitting the Plaintiff alleged note-holder to force payment from Defendants by claiming the status of holder in due course.

## AMENDED COUNTERCLAIMS AND THIRD PARTY COMPLAINT

### PRELIMINARY STATEMENT

This action arises out of a predatory mortgage loan fraudulently made to the Ukpes by Countrywide Home Loans, Inc., America's Wholesale Lender, Inc., Morgan Funding Corporation, and Robert Childers. The loan was predatory, unfair and unconscionable because these Third-Party Defendants knew the loan was doomed to foreclosure given the toxic combination of no down payment, an adjustable rate loan with an interest only introductory rate period of three years, and a borrowers' income that could not sustain payment of the mortgage principal, interest, taxes and insurance.

As part of a scheme and artifice to defraud the Ukpes and others, these four Third-Party Defendants knowingly falsified the Ukpes' income and placed the Ukpes into a no down payment, interest only for the first three years, adjustable rate mortgage knowing the Ukpes' lacked the ability to repay and that their home would be lost to foreclosure. Also as part of the same scheme and artifice to defraud the Ukpes and others, these four Third-Party Defendants knowingly made false promises to refinance the Ukpes into a lower interest, fixed rate conventional mortgage if only the Ukpes would make their mortgage payments for three and then sixth months.

### PARTIES

1. Third Party Plaintiffs Victor and Enoabasi Ukpe (hereinafter "Third Party Plaintiffs") reside at 717 South 7th Avenue, Galloway Township, New Jersey.

2. Third Party Plaintiffs Victor and Enoabasi Ukpe are the parents of five (5) children aged ten (10) and under.

8

3. The Ukpe family is African-American.

4. Mr. Ukpe is self employed and was so employed at the time of the loan transaction as a taxi cab driver.

5. At the time of the loan transaction Mrs. Ukpe was a homemaker with no outside source of income.

6. At the time of the loan transaction Mr. Ukpe was the sole breadwinner for the family of six.

7. Third-Party Defendant Countrywide Home Loans, Inc. (hereinafter "CHL") is a licensed lender authorized to do business in the State of New Jersey.

8. Third-Party Defendant CHL maintains an office at 525 Lincoln Drive West, Suite 405, Marlton, New Jersey.

9. Third-Party Defendant CHL regularly does business in the State of New Jersey.

10. Third-Party Defendant America's Wholesale Lender (hereinafter "AWL") is a corporation organized and existing under the laws of New York.

11. Third-Party Defendant AWL is a mortgage lender licensed to do business in the State of New Jersey.

12. Third-Party Defendant AWL maintains an office at 525 Lincoln Drive West, Suite 405, Marlton, New Jersey.

13. Third-Party Defendant AWL regularly does business in the State of New Jersey.

14. At the time of the loan transaction, Third-Party Defendant Morgan Funding Corporation (hereinafter "Morgan") was a New Jersey corporation with a principal place of business 26 Journal Square, 9th Floor, Jersey City, New Jersey, 07306.

15. Until on or about January of 2008, Third-Party Defendant Morgan was a mortgage banker licensed to do business in the State of New Jersey.

16. On or about January of 2008, Third-Party Defendant Morgan surrendered its license to act as a mortgage banker in the State of New Jersey.

17. Third-Party Defendant Morgan claimed to have maintained an office at 303 George Street, Suite 307, New Brunswick, New Jersey, 08901.

9

18.  At the time of the loan transaction, Third-Party Defendant Robert Childers (hereinafter "Childers") was employed by both Third Party Defendant CHL and Third Party Defendant Morgan.

19.  Upon information and belief, Third-Party Defendant Childers resides at 130 Edgar Avenue, South Plainfield, NJ 07080.

20.  As a Morgan employee, Third-Party Defendant Childers maintained offices at 303 George Street, New Brunswick, New Jersey and 26 Journal Square, Ninth Floor, Jersey City, New Jersey 07306.

21.  Third-Party Defendant Childers was employed as a senior loan officer for Morgan.

22.  Third-Party Defendant Childers was an employee of Third Party Defendant CHL and his employer CHL maintained offices at Countrywide Home Loans, Inc., 6430 Southpoint Parkway, Suite 300, Jacksonville, Florida 32216.

23.  Childers was employed as an interviewer by Third Party Defendant CHL.

24.  Third-Party Defendant Countrywide Home Loans Servicing LP (hereinafter "CHL Servicing") is a mortgage servicing company regularly doing business in the State of New Jersey.

25.  Third-Party Defendant CHL Servicing maintains an office at 7105 Corporate Drive, Plano Texas 75024 and a mailing address at P.O. Box 660694, Dallas, Texas 75266.

26.  Third-Party Defendant CHL Servicing's Registered Agent in the State of New Jersey is The Corporation Trust Company located at 820 Bear Tavern Road, Trenton, New Jersey 08628.

27.  Plaintiff, Defendant on the Counterclaim, is a passive trust special purpose vehicle created by businesses closely associated with Third Party Defendants CHL, CHL Servicing and AWL.

## STATEMENT OF FACTS

28.  Prior to purchasing a home on July 29, 2005, the Ukpe family had never owned a home or had a mortgage.

29.  As inexperienced and unsophisticated first time mortgage borrowers, they relied

upon Third-Party Defendants Childers, Morgan, CHL and AWL to treat them fairly and honestly.

30. In 2004, the tax year before the Third-Party Defendants fraudulently induced the Ukpes to enter into a predatory lending transaction, the adjusted gross income for the Ukpe family was $12,198.

31. In 2004, the tax year before the Third-Party Defendants fraudulently induced the Ukpes to enter into a predatory lending transaction, the federal poverty guideline for a family of six was $25,210, so the Ukpes adjusted gross income was less than half the federal poverty guideline.

32. Prior to entering into the predatory loan transaction, Third Party Plaintiffs had been renting an apartment for fifteen (15) years and their monthly rental payments were approximately $760 a month.

33. Although their apartment was affordable, the Ukpes yearned to buy a home of their own.

34. In or about early 2005, Mr. Ukpe met Childers of Morgan while driving Childers in his taxi in Atlantic City, New Jersey.

35. In the course of conversation in the taxi cab, Childers identified himself as a mortgage broker with Morgan and he engaged Mr. Ukpe in a conversation about the housing market.

36. Upon learning the Ukpes were interested in moving from their apartment to a house, Childers expressed how he could find a way for Mr. Ukpe to afford a home for his family.

37. Childers gave Mr. Ukpe his Morgan business card and suggested that Mr. Ukpe contact him about becoming "pre-approved" for a home loan.

38. Approximately in March of 2005, Mr. Ukpe contacted Childers about becoming "pre-approved" for a home loan.

39. Childers instructed the Ukpes to provide detailed financial information to Morgan as part of the pre-approval application process.

40. At Childers' instruction, the Ukpes provided Morgan copies of their income tax and bank account information, which accurately detailed their income as part of the application process.

11

41. The Ukpes provided Morgan with a copy of their 2004 tax return showing an adjusted gross income of $12,198.

42. They advised Childers that they were paying $760 a month rent and could not afford a mortgage payment greater than $1,000 a month.

43. On or about March 29, 2005, Childers sent the Ukpes a letter stating that they were approved for a conventional mortgage by Morgan for up to $152,000.

44. Following their preapproval, the Ukpes looked for but were unable to find a home they could purchase with a mortgage loan for $152,000.

45. Childers kept close communication with the Ukpes for the next four months, telephoning frequently.

46. In or about late spring or early summer of 2005, the Ukpes advised Childers they could not find a home they could afford to purchase with a $152,000 mortgage.

47. Despite what the Ukpes told Childers, in furtherance of the scheme to defraud the Ukpes, on or about late spring or early summer of 2005, Mr. Childers encouraged the Ukpes to continue looking for homes that exceeded the $152,000 pre-approval because of their good credit.

48. During the period prior to closing, when Childers would call and Mrs. Ukpe answered the telephone, Childers would scold her to "start packing" because they would be moving "any day now."

49. On or about late spring or early summer of 2005, the Ukpes did locate a home for their family, but it was priced at $224,000.

50. On or about late spring or early summer of 2005, Mr. Ukpe advised Childers the Ukpes had found a home for their family.

51. On or about late spring or early summer of 2005, in furtherance of the scheme to defraud, Mr. Childers claimed that he would find financing for the Ukpes to purchase a $224,000 home.

52. On or about late June or early July of 2005, in furtherance of the scheme to defraud, Childers falsely told the Ukpes that Third-Party Defendant America's Wholesale Lender would provide them with a conventional fixed rate mortgage.

53. On or about July 13, 2005, Childers telephoned the Ukpes and told them he was sending loan application documents he had prepared for them to sign and instructed them to return to him immediately.

54. On or about July 13, 2005, Childers faxed the Ukpes a large number of completed loan application documents requiring their signatures.

55. On or about July 14, 2005, the Ukpes signed the documents as instructed by Childers and faxed copies back to Childers.

56. As part of the scheme and artifice to defraud, Third-Party Defendants CHL, AWL, Childers and Morgan knowingly ignored the proof that the Ukpes could not afford the loan.

57. Title and loan closing took place on July 29, 2005 at which time the Ukpes first learned from their real estate agent that their monthly principal and interest payment would be $1,488.67 a month.

58. The Ukpes were not represented by counsel and the closings took place using a title company.

59. This was contrary to what Mr. Ukpe had told Childers, namely that the Ukpes could not afford to pay more than $1,000 a month.

60. The Ukpes balked at closing the loan.

61. In the presence of the Ukpes, the real estate agent called Childers and explained that the Ukpes were not comfortable going forward with the loan.

62. After what appeared to be a heated conversation between the real estate agent and Childers, the real estate agent handed Mr. Ukpe the phone.

64. Mr. Ukpe stated that the monthly payment was too high to which Childers responded that the Ukpes needed to only make three months of payments and then they would be refinanced and that it would be all right.

65. As part of the scheme and artifice to defraud the Ukpes, the Third-Party Defendants lulled the Ukpes to enter into the transaction by knowingly making false promises to refinance the loan on better terms if the Ukpes would only make payments for a brief period of time.

66. Childers omitted to inform the Ukpes that taxes were not included in their monthly $1,488.67 mortgage payment.

13

67. Childers also omitted to inform the Ukpes that the monthly $1,488.67 was an interest only payment for three years and then would readjust upward.

68. In reliance on these false promises made by Childers, the Ukpes entered into the loan transaction and made the first three mortgage payments.

69. After making three months of payments as instructed by Childers, on or about late October or early November 2005 the Ukpes called CHL Servicing about refinancing to a lower interest, fixed rate conventional loan.

70. Contrary to the promises made by Childers, on or about late October or November of 2005, CHL Servicing refused to refinance the Ukpes' loan.

71. Instead, on or about late October or November of 2005, CHL Servicing falsely told the Ukpes they needed only to maintain another three months of good payments and then they would be refinanced into a lower interest, fixed rate conventional loan.

72. In reliance on these false promises made by the CHL Servicing, the Upkes continued to make another three months of interest only payments.

73. The Ukpes made all payments during the first six months in a timely fashion.

74. After making the first six monthly payments in reliance upon the false promises, the Ukpes again called CHL Servicing who again refused to refinance the Ukpes' loan.

75. Instead, on or about February of 2006 CHL Servicing told the Ukpes they had to make another six months of payments before they could get refinanced.

76. Unknowingly the Ukpes fell behind in their taxes.

77. Around early 2007 they were informed CHL Servicing that America's Wholesale Lender now required them to pay a monthly escrow for taxes and insurance.

78. In or about July 2007, the Ukpes monthly payments jumped nearly $900 a month as a result of the escrow for taxes and insurance and the Ukpes were unable to maintain mortgage payments.

79. It was only after closing that the Ukpes learned that they in fact had an interest only loan for three years and then would have an adjustable rate mortgage for the remainder.

14

**FIRST COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT**

**Common Law Fraud**

80. Third Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

81. Using misrepresentation and omissions of material information, Third-Party Defendants induced, obtained and or procured the signature of Third-Party Plaintiffs which allowed the mortgage loan transaction to take place. This conduct unreasonably placed the home at risk of foreclosure which has now become a reality.

82. Third-Party Plaintiffs believed that they were receiving a fixed rate mortgage. Childers, the mortgage broker and employee of Morgan, informed them that they would be eligible for a fixed rate mortgage based on their income and excellent credit.

83. Third-Party Plaintiffs also submitted information regarding their income and credit to Childers/Morgan, who in turn submitted the information to CHL and AWL. Third-Party Plaintiffs submitted 2004 income tax returns, pay stubs and bank receipts to Childers/ Morgan. A credit report was also submitted by Childers/ Morgan to CHL and AWL.

84. Third-Party Defendants acted at all times relevant knowingly, with fraudulent intent. Third-Party Defendants knew that the loan was unaffordable from its inception.

85. Third-Party Plaintiffs specifically informed Childers/Morgan that they could not afford more than $1,000 a month mortgage. Third-Party Plaintiffs had been paying approximately $760 a month for rent.

86. Third-Party Plaintiffs were told and based on their credit, had every reason to believe that they would be obtaining a fixed interest rate. It was not until closing that Third-Party Plaintiffs learned that how high their monthly payment would be. Upon expressing their displeasure, Childers coaxed Third-Party Plaintiffs into continuing with the loan telling them that the lender would refinance them after three months.

87. It was not until after Third-Party Plaintiffs had signed the loan documents that they learned that not only was the loan not a fixed interest rate as promised but was interest only for three years.

15

88. Third-Party Plaintiffs did not know that their monthly mortgage payment would not include escrow for property taxes until they were notified by the servicer for the loan.

89. Third-Party Plaintiffs informed the servicer that they had been told that they would be able to refinance after three months. The servicer informed them that they needed to make payments for another three months before they would be eligible to refinance.

90. When Third-Party Plaintiffs again contacted the servicer to attempt a refinance they were informed then that they could not refinance until they had been in the property a year.

91. At no time did the servicer take Third-Party Plaintiffs' application to refinance.

92. Third-Party Plaintiffs suffered damages of the fraud committed by Third-Party Defendants.

93. Third-Party Defendants are liable for the conduct of their predecessors in interest, employee/employees, and or agents.

94. Third-Party Defendants' fraud in connection with the mortgage loan transaction entitles Third-Party Plaintiffs to rescind the transactions and obtain damages, including but not limited to recoupment and/or setoff for costs and fees and additional interest paid in addition to actual and punitive damages.

95. Plaintiff, defendant on the Counterclaim, is not an innocent purchaser of Defendants' mortgage note.

96. Because of Plaintiff's close connection with Third-Party Defendants CHL, AWL and CHL Servicing, Plaintiff had reason to know it was purchasing a predatory loan.

97. On information and belief, Plaintiff is a passive trust special purpose vehicle created by businesses closely associated with Third-Party Defendants CHL, AWL and CHL Servicing.

98. Plaintiff received the trust fund that allegedly included Defendants' mortgage loan file by conveyance of a trust fund from a Depositor, CWABS, Inc.

99. CWABS, Inc. is another special purpose vehicle created or controlled by Third-Party Defendant CHL or related business entities.

16

100. CHL had a thorough knowledge of the nature and method of operation of Third-Party Defendants AWL and Morgan Funding's businesses, and exercised extensive control over them.

101. On information and belief, CHL played a central role in the structuring the financial transactions sold to the trust, including soliciting the purchase of loans, setting criteria for loans, making representations and warranties about the loans, financing the loans, fashioning and supplying of the form of mortgage and note used by CHL and AWL, and in setting the terms of the mortgage transaction, which were designed to put the Defendants into a predatory loan while permitting the Plaintiff alleged note-holder to force payment from Defendants by claiming the status of holder in due course.

102. Plaintiff is accountable for the acts of Third-Party Defendants by reason of its close connectedness to and knowledge of Third-Party Defendants' actions.

**WHEREFORE,** Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a. Obtaining declaratory and injunctive relief declaring the Mortgage Loan Transaction as void and unenforceable;

b. Obtaining declaratory relief invalidating the Mortgage Loan Transaction and/or barring the foreclosure;

c. Terminating Third Party Defendants' and Plaintiff's security interest in the residence;

d. Awarding actual damages and costs;

e. Awarding punitive damages;

f. Awarding attorneys' fees;

g. Granting such other relief as the court deems just and equitable.

## SECOND COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

**Consumer Fraud N.J.S.A. 56:8-2 et. seq.**

17

103. Third Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

104. Third-Party Defendants engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise and/or misrepresentations relating to the mortgage loan transaction.

105. Third-Party Defendants engaged in acts of omission, including but not limited to knowing concealment, suppression, and omissions of material facts in connection with the mortgage transaction.

106. Third-Party Defendants are liable for the conduct of their predecessors.

107. Third-Party Defendants' fraud in connection with the mortgage transactions entitles the Third Party Plaintiffs to rescind the transaction.

108. The foregoing acts by Third-Party Defendants constitute violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 at seq., as a result of which Third Party Plaintiffs suffered ascertainable loss.

109. Third Party Defendants engaged in unconscionable commercial conduct when they presented to Third Party Plaintiffs complicated and lengthy contract documents for their signature at closing. Furthermore, there was a failure to identify and disclose the material terms and conditions set forth in the mortgage and disclosure documents.

110. Third Party Defendants failed to provide pre-closing information regarding the adjustable rate mortgage the Ukpes had been switched to. The failure to adhere to requirements and regulations, coupled with the misrepresentations, deception and omissions, constitutes an offense under the New Jersey Consumer Fraud Act.

111. Third Party Defendants engaged in unconscionable commercial conduct when they induced Third Party Plaintiffs to borrow an amount which they qualified for only as subprime borrowers.

WHEREFORE, Third Party Plaintiffs seek a judgment against Third Party Defendants and Plaintiff as follows:

a. Voiding and/or rescinding the loan transaction and granting the Third Party Plaintiffs' claim of recoupment and/or setoff, including equitable relief seeking a discharge of the mortgage transactions as appropriate;

b. Declaratory relief invalidating the Mortgage Loan Transaction and/or barring the

18

foreclosure;

c.  Awarding actual damages;

d.  Awarding treble damages;

e.  Awarding costs;

f.  Awarding attorneys' fees; and

g.  Granting such other relief as the court deems just and equitable.

## THIRD COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Common law of Unconscionability

112.  Third-Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

113.  Third-Party Defendants engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentations.

114. Third-Party Defendants engaged in acts of omission, including but not limited to knowing concealment, suppression and omissions of material facts.

115.  Prior to and during the time of the loan transactions, there existed a disparity in bargaining power between Third-Party Plaintiffs and Third-Party Defendants.  The Ukpes are immigrants who are not knowledgeable about high finance.  Third-Party Defendants are well versed in the mortgage business and initiate, conduct and close hundreds of such mortgage transactions a year.

116.  Third-Party Defendants completed loan applications for, or extended credit to Third-Party Plaintiffs in spite of knowing they had no ability to repay the loan. In doing so, Third-Party Defendants knew or should have known from the information that it had obtained was false and thereby increased the likelihood that the loan would go into default.

117.  Third-Party Defendants encouraged, and/or neglected to inform Third-Party Plaintiffs to attend the closings with an attorney who could explain to them the true nature and terms of the loans and protect them from the above identified Third-Party Defendants' unconscionable practices, and who could have reduced the disparity in bargaining power between the parties.

19

118.   Third-Party Defendants prevented Third-Party Plaintiffs from reviewing and thereby better understanding the loan documents prior to and during the closing.

119.   Given the disparity of bargaining power between the parties and the imbalance of understanding between the parties and the lack of disclosure the obligations the above referenced conduct can be described as nothing less than unconscionable.  Said acts did cause Third-Party Plaintiffs to have a lack of meaningful choice in connection with the alleged mortgage loan transactions.

120.   The loan terms provided by Third-Party Defendants:

a.      skimmed off any equity in Third-Party Plaintiffs' home which might have accrued;

b.      provided little or no economic benefit to Third-Party Plaintiffs;

c.   contained base interest rates that were not commensurate with the actual economic risks; and

d.      placed Third-Party Plaintiffs in jeopardy of losing their home, which served as collateral for the loan.

121.   Third-Party Defendants engaged in unconscionable commercial conduct when the only loan Third-Party Plaintiffs "qualified" for was a subprime loan.

122. The above described substantive unconscionability rendered the mortgage loan contract unreasonably favorable to Third-Party Defendants to the detriment of Third-Party Plaintiffs.

123.   Third-Party Defendants breached the covenant of good faith and fair dealing implied in all contracts.

124.   The above described unconscionable practices render void and unenforceable the mortgage loan transaction entered into between Third-Party Plaintiffs and Third-Party Defendants.

WHEREFORE, Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a.      An Order providing that the mortgage loan transaction is void and unenforceable due to unconscionability;

20

b.    Awarding actual damages;

c.    Awarding punitive damages;

d.    Awarding attorneys fees and costs; and

e.    Granting such other relief as the court deems just and equitable.

## FOURTH COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Contract formation claims/common law rescission

125.  Third-Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

126.  The above described contracts were the result of fraud.

127.  No meeting of the minds existed between the parties when they entered into the above described contracts.

128.  Third-Party Defendant America's Wholesale Lender failed to obtain the legitimate, meaningful consent of Third-Party Plaintiffs for the terms of the mortgage loan contract.

129.  The terms of the contracts do not reflect a bargained for exchange.

WHEREFORE, Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a. Rescinding the loan transaction;

b. Termination of the security interest created in the home;

c. Actual damages;

d. Awarding attorneys fees and costs in connection with this suit, and;

e. Granting such other relief as the court deems just and equitable.

21

## FIFTH COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Negligent Lending

130. Third-Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

131. Third-Party Defendant AWL, Morgan and Childers engaged in negligent lending. Third-Party Defendant AWL, Morgan and Childers had a duty to use reasonable care when dealing with Third-Party Plaintiffs during the mortgage transaction and they breached this duty by failing to:

a. Inform Third-Party Plaintiffs of the nature and terms of these transactions;

b. Arrange for and obtain a mortgage loan that Third-Party Plaintiffs could afford based on their income;

c. Reasonably investigate Third-Party Plaintiffs' financial circumstances;

d. Deny the application for credit when it is unsupported by insufficient income; and

e. Offer more than one finance package or an alternative finance vehicle for which they were qualified.

f. Comply with all state and federal laws.

132. Third-Party Defendant AWL, Morgan and Childers were negligent, careless and reckless in initiating, arranging and consummating said mortgage.

133. Through misrepresentations and omissions of material information, Third Party Defendant AWL, Morgan and Childers induced Third Party Plaintiffs to enter into the mortgage transaction which culminated in the present foreclosure.

134. Third-Party Defendant AWL, Morgan and Childers induced Third-Party Plaintiffs to enter into this mortgage transaction based upon fraud rather than their ability to pay when it required willfully ignored the bank statements and federal income tax returns submitted by the Third-Party Plaintiffs.

135. It was foreseeable to Third-Party Defendants AWL, Morgan and Childers that Third-Party Plaintiffs would be unable to make the monthly payments on this loan.

136. Third-Party Plaintiffs have suffered serious injury as the proximate result of the

22

negligence committed by Third-Party Defendants AWL, Morgan and Childers.

WHEREFORE, Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a. Actual damages;

b. Termination of the security interest created in the residence;

c. Return of any proceeds given, billed or paid to Third Party Defendants AWL, Morgan and Childers;

d. Attorneys fees and Costs; and

e. Granting such other relief as the court deems just and equitable.

## SIXTH COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Credit Discrimination/Fair Housing Act Violations

137. The Third-Party Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

138. Third-Party Defendants violated FHA by discriminating against Third-Party Plaintiffs on the basis of their race/national origin.

139. Third-Party Defendants offered loan terms that were much less favorable than the loan terms which should have been offered to the Third-Party Plaintiffs based upon objective factors of credit worthiness.

140. Third-Party Defendants violated FHA by engaging in conduct that caused the Third Party Plaintiffs to suffer disparate impact credit discrimination on the basis of their race/national origin.

141. Third-Party Plaintiffs suffered damages.

WHEREFORE, Third Party Plaintiffs seek a judgment against Third Party Defendants and Plaintiff as follows:

a.    Awarding actual damages;

b.    Awarding punitive damages; and

23

c.    Granting such other relief as the court deems just and equitable.

## SEVENTH COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Credit Discrimination/ Equal Credit Opportunity Act Violations

142. The Third-Party Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

143. Third-Party Defendants violated ECOA by discrimination against Third-Party Plaintiffs on the basis of their race/national origin.

144. Third-Party Defendants offered loan terms which were much less favorable than the loan terms which should have been offered to Third-Party Plaintiffs based upon objective factors of credit worthiness.

145. Third-Party Defendants violated ECOA by failing to provide a written application and/or a written counteroffer in a form which Third-Party Plaintiffs could understand when they elected to change the credit terms discussed with Third-Party Plaintiffs.

146. Third-Party Plaintiffs suffered damages.

WHEREFORE, Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a.    Awarding actual damages;

b.    Awarding punitive damages; and

c.    Granting such other relief as the court deems just and equitable.

## EIGHTH COUNT OF AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Conspiracy to Violate New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*

147. Third-Party Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

24

148. Third-Party Defendants CHL, AWL, CHL Servicing LP, Morgan and Childers (collectively referred to herein as the "CFA Conspirators") entered into an agreement to induce the Ukpes to enter into and remain in a predatory lending transaction in violation of the CFA, N.J.S.A. § 56:8-1 *et seq.*

149. The CFA Conspirators intentionally, knowingly and willfully participated in this scheme by committing overt acts, making misrepresentations and failing to provide material information in furtherance of the agreement, including but not limited to the following false promises, misrepresentations and deceptive practices:

a. Soliciting the Ukpes, as financially unsophisticated consumers, with false promises that the CFA Conspirators could provide affordable financing for the Ukpes to purchase a home;

b. Falsifying the Ukpes' income on loan application documents.

c. Suppressing truthful financial information provided by the Ukpes.

d. Inducing the Ukpes to enter into a mortgage transaction to finance the purchase of a home without disclosing the Ukpes' true financial obligations including the amount of their total monthly payment;

e. Initially lulling the Ukpes into believing that if they entered into the mortgage transaction and made three months payments, the CFA Conspirators would refinance the Ukpes loan in an amount they could afford.

f. Continuing to lull the Ukpes into believing that if they made a total of six months mortgage payments, the CFA Conspirators would refinance the Ukpes loan in an amount they could afford.

g. Continuing to lull the Ukpes into believing that if they made a total of one year of mortgage payments, the CFA Conspirators would refinance the Ukpes loan in an amount they could afford.

WHEREFORE, Third-Party Plaintiffs seek a judgment against Third-Party Defendants and Plaintiff as follows:

a. Voiding and/or rescinding the loan transaction and granting the Third Party Plaintiffs' claim of recoupment and/or setoff, including equitable relief seeking a discharge of the mortgage transactions as appropriate;

b. Declaratory relief invalidating the Mortgage Loan Transaction and/or barring the foreclosure;

c. Awarding actual damages;

d. Awarding treble damages;

e. Awarding costs;

f. Awarding attorneys' fees; and

g. Granting such other relief as the court deems just and equitable.

SOUTH JERSEY LEGAL SERVICES, INC.
Attorneys for Third-Party Plaintiffs Victor and Enoabasi Ukpe

By:

Abigail B. Sullivan Esq.

Dated: March 10, 2009

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Abigail B. Sullivan Esq. of South Jersey Legal Services

Inc is hereby designated as trial counsel for the Third-Party Plaintiffs Victor and

Enoabasi Ukpe in this matter.

Dated: March 10, 2009          South Jersey Legal Services Inc

Attorneys for Third-Party Plaintiffs Victor and Enoabasi Ukpe

By:

Abigail B. Sullivan, Esq.

**JURY DEMAND**

Defendants Victor and Enoabasi Ukpe hereby requests trial by jury on all jury issues.

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I certify that a copy of the within Answer, Affirmative Defenses, Counterclaims, with Demand for Trial by Jury was served within the time prescribed by the rules of Court and that a copy of the same has been forwarded to:

> Brian Blake, Esq.
> Phelan, Hallinan & Schmieg, P.C.
> 400 Fellowship Road
> Suite 100
> Mt. Laurel, NJ 08054

The undersigned does hereby certify that the matter in controversy is the subject of no other pending lawsuits, proceedings or arbitrations in existence or currently contemplated of which I am aware.

Dated: March 10, 2009

South Jersey Legal Services Inc
Attorneys for Third-Party Plaintiffs Victor and Enoabasi Ukpe

By: _____
Abigail B. Sullivan, Esq.

**SERVICE UPON ATTORNEY GENERAL**

Service of a copy of the initial answer/counterclaim and complaint in this matter

is being made upon the Attorney General of the Sate of New Jersey, pursuant to the

Consumer Fraud Act for the purpose of encouraging intervention, by mailing a copy of

said complaint to Anne Milgram, Attorney General, Office of the Attorney General,

Hughes Justice Complex, P.O. Box 080, 25 West Market Street, Trenton, NJ  08625-

0080.

Dated: March 10, 2009          SOUTH JERSEY LEGAL SEVICES INC

Attorneys for Third-Party Plaintiffs Victor and Enoabasi Ukpe

By: _____

Abigail B. Sullivan, Esq.

28

Douglas Gershuny, Executive Director
SOUTH JERSEY LEGAL SERVICES, INC.
745 MARKET STREET
CAMDEN, NEW JERSEY 08102
(856)964-2010 Ext. 6907
Attorneys for Victor and Enoabasi Ukpe
FILING FEES WAIVED PURSUANT TO R. 1:13-2
BY:  Abigail B. Sullivan, Esq.

| | | |
|---|---|---|
| BANK OF NEW YORK AS TRUSTEE FOR CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-AB3 | : : : : | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION ATLANTIC COUNT |
| | : | |
| Plaintiff, | : : | |
| v. | : | DOCKET NO.: F-10209-08 |
| VICTOR O. UKE, ET AL. | : | Civil Action |
| | : | |
| Defendant, | : : | |
| | : | |
| VICTOR AND ENOABASI UKPE | : : | |
| Third Party Plaintiffs | : | CERTIFICATION |
| | : | OF SERVICE |
| CORPORATION, AMERICA'S WHOLESALE LENDERS | : : | |
| Third Party Defendants | : : | |

## CERTIFICATION OF SERVICE

Jennifer L. Smith, Paralegal for South Jersey Legal Services, Inc., attorney(s) for defendant(s), Victor O. Ukpe, hereby certifies that the foregoing copy of Amended Answer/Amended Third Party Complaint, was served upon the following parties by regular mail dated March 10, 2009 to the following individuals:

Brian Blake, Esquire
PHELAN, HALLINAN & SCHMIEG, P.C.
400 Fellowship Road, Suite 100
Mt. Laurel, New Jersey  08054

Daniel S. Bernheim, Esquire
WILENTZ, GOLDMAN & SPITZER, P.A.
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102

Attn: Anne Milgram, Attorney General
Office of the Attorney General
Hughes Justice Complex
P.O. Box 080
25 West Market Street
Trenton, New Jersey 08625-0080

Dated: 3/10/09

JENNIFER L. SMITH, PARALEGAL