# EXHIBIT 33

*March 12, 2009 letter from Jonathan K. Moore representing Countrywide Home Loans responding to the Ukpes' Qualified Written Request for loan information*



direct dial number:  
(215) 575-7137

Dilworth
Paxson LLP

Jonathan K. Moore  
jmoore@dilworthlaw.com

March 12, 2009

Attn: Abigail B. Sullivan  
South Jersey Legal Services, Inc.  
Consumer Unit  
1415 Route 70 East, Suite 300  
Cherry Hill, NJ 08034

Re:   Borrower: Victor & Enoabasi Ukpe (collectively, the "Borrower")  
      Property Address: 717 S 7th Ave., Galloway, NJ 08205  
      Countrywide Loan Number: 111615840

Dear Ms. Sullivan:

This firm represents Countrywide Home Loans, Inc. ("Countrywide") with regard to the above loan (the "Loan"). I am writing in response to your correspondence dated December 9, 2008 (the "Letter") addressed to Countrywide, wherein you request information on the above referenced account. Although couched as a "qualified written request," the information requested in your correspondence goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605(B) ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. Your Letter seeks information which goes well beyond that which is available through a QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

Although your Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C. §2605, Countrywide did review its file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. The results of this review of the Borrower's Loan file are set forth below and in the documents attached hereto.

The Loan was originated on July 29, 2005, with the first payment due for the September 2005 installment. Initially there was no escrow account setup on the Loan, as the Borrower accepted responsibility to pay the property tax and hazard insurance bills on his/her own; however, due to the Borrower's failure to pay these bills, an escrow is now in place. The Loan is in foreclosure status, due for the September 2007 installment; however, the Loan is temporarily in workout status. The following are specific responses to the numbered inquiries in the Letter:

1.  7.975%.

2.  This interest rate has remained unchanged since the inception of this Loan.

3.  The current owner of the Loan is The Bank of New York Mellon as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-AB3, whose address is 101 Barclay St 4W, New York, NY 10286.

4.  See response to paragraph 3 above.

5.  This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

6.  Countrywide has serviced the Loan since inception.

7.  See response to paragraph 6 above.

8.  Enclosed is a *Payment History* that provides a detailed outline of transactions for this Loan during Countrywide's servicing. Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. Please note the *Payment History* is designed to be user-friendly and there are no codes or terms used in the *Payment History* that require specific definitions. To date, the fees that have been charged against the account and are not reflected in the *Payment History* are as follows: return payment fees of $40.00; inspection fees of $375.00; court costs of $25.00; process server fees of $460.00; recording fees of $230.00; attorney/trustee/foreclosure fees of $910.00; skip trace fee of $15.00; title fees of $175.00; and filing fees of $200.00.

9.  See response to paragraph 8 above and the enclosed *Payment History*.

10. See enclosed *Payment History* for the current principal balance and the amount of the deficiency in the escrow account. As of March 12, 2009 the total amount of accrued and unpaid interest is $28,760.76, with interest continuing to accrue at the per diem rate of $48.8368.

11. See response to paragraph 8 above and the enclosed *Payment History*.

12. See response to paragraph 8 above and the enclosed *Payment History*.

13. The current monthly escrow charge of $657.79 is broken down as follows: property taxes $249.45 ($2,993.35 annually divided by 12); hazard insurance $113.58 ($1,363.00 annually divided by 12); projected escrow shortage $234.50 ($2,813.97 annually divided by 12); and 16.6% reserve of $60.26 ($723.15 divided by 12). For details regarding the reasons for any change in escrow charges, the Borrower should review the annual escrow statements that have been regularly issued to the Borrower during the life of the Loan.

14. This information can be found on the annual escrow statements that were regularly issued to the Borrower as scheduled. Copies of the issued statements are not retained; however, the information is available in electronic format for associates to discuss with Countrywide's customers during customer service telephone or correspondence inquiries or when customers view their loan information on the website.

15. See response to paragraph 8 above and the enclosed *Payment History*.

16. Enclosed are copies of the Interest Only Adjustable Rate Note, Mortgage, and Interest Only Adjustable Rate Rider.

17. Enclosed is the Appraisal of Real Property. The remainder of request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

18. This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

19. This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

20. This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

21. This request is declined as it seeks documentation and information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605(B).

22. See response to paragraph 8 above and the enclosed *Payment History*.

23. See enclosed Mortgage.

24. A detailed payoff demand statement will be faxed to you within 10 business days.

In providing the above response, Countrywide is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Countrywide has temporarily placed the Loan into workout status to stop the foreclosure process. This Loan will be reviewed for eligibility and interest in Countrywide's Homeownership Retention Program.

We encourage Borrower to contact Countrywide's Home Retention Department at (800) 669-6650. At the time of the Borrower's call, the Borrower should be prepared to provide and discuss all of the following:

- His/her loan number and property address;
- His/her household income and expenses;
- A brief explanation of his/her circumstances; and
- Recent income documents such as pay stubs (last 60 days for each income earner) and benefit statements from Social Security, Disability, Unemployment, Retirement, or Public Assistance. If any borrower is self-employed, each such borrower should be prepared to provide and discuss his/her last three bank statements and either his/her tax returns or a year-to-date profit and loss statement.

Please forward the required information to Countrywide's Home Retention Division via facsimile at (866) 619-4249.

Very truly yours,

Jonathan K. Moore

Enclosures