

**SEAN T. O'MEARA**
*Also Member of Pennsylvania Bar*

ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968
856-795-2121
FAX 856-795-0574

Email Address:
someara@archerlaw.com
Direct Dial:
(856) 354-3082

www.archerlaw.com

October 9, 2009

Honorable Joel Schneider
United States Magistrate Judge
Mitchell H. Cohen Bldg
4th & Cooper Streets, Room 1050
Camden, NJ  08101

**Re:     Pending Discovery Disputes in Case No. 09-1710**

Dear Judge Schneider:

Pursuant to the Court's June 10, 2009 modified scheduling order, third-party defendants Countrywide Home Loans, Inc. ("CHLI"); America's Wholesale Lender ("AWL"); and Countrywide Home Loans Servicing LP ("CHLS") (collectively referred to as "Countrywide") hereby respond to the October 2, 2009 letters submitted by the Ukpes concerning discovery disputes in this case.[1]  As indicated in the Ukpes' letters, the parties have conferred in an attempt to resolve their disputes, but several remain outstanding.

Many of the concerns raised by the Ukpes in their October 2 letters to the Court were addressed during the parties' meet and confer process over the past several weeks.  In fact, Countrywide submits that some have been rendered moot by supplemental responses already submitted by Countrywide to the Ukpes.  And, as discussed below, the bulk of the Ukpes' other concerns should be rejected by this Court as improper, if not entirely frivolous.

## BACKGROUND

---

[1]    While the Ukpes submitted separate letters concerning the responses of CHLI, AWL, and CHLS, the issues raised in each letter are substantively identical.  Thus, for the convenience of the Court, Countrywide is submitting this single response to all three letters.  When necessary herein, citations to discovery requests and the Ukpes' letters identify the specific Countrywide entity to whom the relevant document applies (*e.g.*, "CHLI Document Requests" or "Ukpes Oct. 2 Ltr. re: AWL").

| *PRINCETON OFFICE* | *FLEMINGTON OFFICE* | *PHILADELPHIA OFFICE* | *WILMINGTON OFFICE* | *GEORGETOWN OFFICE* | *NEW YORK OFFICE* |
|---|---|---|---|---|---|
| 700 Alexander Park | Plaza One | One Liberty Place - 32nd | 300 Delaware Avenue | 9 East Market Street | 2 Penn Plaza |
| Suite 102 | 1 State Route 12, Suite 201 | Floor | Suite 1370 | P.O. Box 977 | Suite 1500 |
| Princeton, NJ 08540 | Flemington, NJ 08822-1722 | 1650 Market Street | Wilmington, DE  19801 | Georgetown, DE 19947 | New York, NY 10121 |
| P 609-580-3700 | P 908-788-9700 | Philadelphia, PA 19103-7393 | P 302-777-4350 | P-302-858-5151 | P 212-292-4988 |
| F 609-580-0051 | F 908-788-7854 | P 215-963-3300 | F 302-777-4352 | F-302-858-5161 | F 212-629-4568 |
| | | F 215-963-9999 | | | |

Hon. Joel Schneider
October 9, 2009
Page 2

### This Litigation

As the Court is aware, this case was originally brought as a state court foreclosure action after the Ukpes defaulted on their home mortgage loan.  The Ukpes contested the foreclosure and asserted several counterclaims against the foreclosing entity, Bank of New York ("BONY").[2] The focus of those counterclaims was that ownership of the Ukpes' loan had not been properly transferred to the trust.  Then, on March 10 and 20, 2009, the Ukpes filed amended answers and asserted third-party complaints against Phelan, Hallinan & Schmieg ("Phelan") (the law firm representing BONY in the foreclosure action) and Morgan Funding Corporation ("Morgan Funding") and Robert Childers (the mortgage broker company and individual employee who worked with the Ukpes to secure their loan), as well as CHLI, AWL, and CHLS.  The claims against Countrywide focused on allegations about improprieties in the origination and servicing of the Ukpes' loan.[3]  Despite the Ukpes' addition of their third-party claims raising allegations concerning the origination, servicing, and assignment of their loan, this case remains an individual dispute about a single loan.

### Discovery To Date

Even though this is at heart a simple dispute about a single loan originated and serviced by Countrywide, the Ukpes served each individual Countrywide entity with separate discovery requests, for a combined total of 270 requests for production (plus an additional 81 requests for electronic discovery) and 75 interrogatories, many of which are abusive and duplicative.  For example, of the 351 document and electronic discovery requests propounded upon the Countrywide entities, 12 of them seek the same exact documents from the same entity twice,[4] and over 100 of them seek identical information from all three entities.[5]  Moreover, despite propounding a "catch-all" request for all loan documents on each entity, in several instances the Ukpes also made several individual requests for specific loan documents.[6]

---

[2]     BONY was the trustee for the trust that owned the Ukpes' loan at the time of the foreclosure.

[3]     AWL, which originated the Ukpes' loan, is simply a d/b/a of CHLI.  CHLS, now named BAC Home Loans Servicing LP, is an affiliate of CHLI that at relevant times serviced the Ukpes' loan.

[4]     *Compare* CHLI Document Requests 19 *with* 77; 36 *with* 88; 81 *with* 82; *compare* CHLS Document Requests 19 *with* 77; 36 *with* 88; 81 *with* 82.

[5]     *Compare* CHLI Document Requests 2-19, 21-22, 37-44, 46, 49-50, 53-55, 58-59, 65-70, 74-75, 86, 91, 96-99 *with* CHLS Document Requests 2-19, 21-22, 37-44, 46, 49-50, 53-55, 58-59, 65-70, 74-75, 86, 91, 96-99 *with* AWL Document Requests 19, 20, 24, 35, 46.

[6]     *Compare* CHLI Document Requests 2-7, 10-12, 14, 21, 86; *compare* CHLS Document Requests 2-7, 10-12, 14, 21, 86; *compare* AWL Document Requests 2-7, 10-12, 14, 21, 24.

LIBW/1720648.4

Hon. Joel Schneider
October 9, 2009
Page 3

Countrywide has already expended considerable time and effort responding to the separately propounded discovery in this case.  In response, Countrywide has produced to the Ukpes all documents concerning the origination and servicing of the Ukpes' loan that have been identified through its investigation to date, and has worked with the other parties in this case to provide the Ukpes with additional documents now sought through discovery—including the Pooling and Servicing Agreement ("PSA") applicable to the Ukpes' loan and documents showing that the loan was, in fact, transferred to the trust.[7]  Among the discovery produced by Countrywide have been electronic documents, including emails between Countrywide employees concerning the origination of the Ukpes' loan.  Countrywide recognizes that it has a continuing duty to respond to discovery propounded in this case and thus its investigation, which also includes reviewing additional electronic discovery, is ongoing to ensure no responsive documents have been overlooked.

In short, in this case concerning the (1) origination of, (2) servicing of, (3) assignment of, and (4) foreclosure affecting the Ukpes' loan, the Ukpes now have in their possession all (1) origination, (2) servicing, (3) assignment, and (4) foreclosure files related to their loan that have been identified.  Thus, despite their protestations to the contrary, the Ukpes have all the information necessary to pursue their claims.

*       *       *

The remaining discovery disputes should be evaluated in light of this background and with an eye towards what, in fact, is at issue in this litigation—*i.e.*, the Ukpes' individual claims against Countrywide and the other defendants.  Discovery that is not tethered to the claims at issue and the scope of this case should not be ordered.  *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."); *Prof'l Recovery Servs. v. GE Capital Corp.*, 2009 U.S. Dist. LEXIS 3889, * 10 (D. N.J. Jan. 15, 2009) ("the scope of discovery is not limitless, and is bound not only by the requirement of relevance and the possibility of producing admissible evidence, but also by the considerations of proportionality"); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, 2008 U.S. Dist. LEXIS 56725, at *16 (D. N.J. July 22, 2008) ("Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded.").

---

[7]     There should be no question that Countrywide was within its rights to direct the Ukpes to information it and the other parties have already produced in this litigation to satisfy its discovery obligations.  *See AstraZeneca v. Ranbaxy Pharms., Inc.*, 2008 U.S. Dist. LEXIS 6337, at *11 (D. N.J. Jan. 25, 2008) ("to the extent information or documents sought have already been produced," it is sufficient "to identify with reasonable detail where [the requesting party] can find it").

Hon. Joel Schneider
October 9, 2009
Page 4

<u>UKPES' DISCOVERY CONCERNS</u>

**1.      Countrywide Has Already Provided Supplemental Responses to Address the Ukpes' Concerns.**

As an initial matter, it is important to note that, through the meet and confer process, Countrywide agreed to supplement its discovery responses in several relevant ways, and since the Ukpes' October 2 Letters to the Court were filed, has done so.  First, Countrywide acknowledged that there were additional interrogatories propounded on AWL and CHLS that had been mistakenly overlooked and thus not answered in its August 31 discovery responses. Countrywide agreed to provide supplemental answers to address the oversight.  Countrywide also agreed to provide a supplement to its discovery responses that would direct the Ukpes to particular documents produced in this litigation that were responsive to particular Interrogatories and Document Requests.  Accordingly, after identifying the previously overlooked Interrogatories and reviewing the documents produced by Countrywide and the other parties, Countrywide has served Supplemental Responses to the Ukpes' discovery that address those concerns.  *See* Countrywide's Supplemental Responses, Attachment A hereto.

In addition, although Countrywide directed the Ukpes to the actual loan files produced as the best source for identifying all of the various employees who had worked on the Ukpes' loan or might have information relevant to their claims, Countrywide agreed to provide the names of particular individuals who it believed would be most likely to have relevant information. Countrywide provided additional names to the Ukpes in counsel's October 2, 2009 letter,[8] and further information is included in Countrywide's supplemental discovery responses.  Beyond identifying such employees, Countrywide has agreed to provide more specific information on any additional employees the Ukpes identify through their review of the loan documents produced and to make available witnesses as required to provide deposition testimony properly noticed pursuant to rule 30(b)(6).

Finally, aside from the employee emails already produced, Countrywide has continued its investigation in an effort to identify, retrieve, and produce any additional employee emails that are relevant to the Ukpes' loan.[9]  That process is continuing, and Countrywide will make any additional emails available as soon as possible.

---

[8]     In the October 2 letter, Countrywide specifically listed six employees who were identified as being involved with the underwriting and origination of the Ukpes' loan, or otherwise familiar with the specific facts of their claims concerning the trust's authority to foreclose. *See October 2, 2009 Letter from Scott Nardi to Ukpes' Counsel* ("Nardi Oct. 2 Ltr.") at 2, Attachment B hereto.

[9]     Pursuant to the parties' discussions, Countrywide is focusing its search on employees who were involved in the origination of the Ukpes' loan and their efforts to enter a loan modification agreement.

Hon. Joel Schneider
October 9, 2009
Page 5

Through its supplemental discovery responses, therefore, Countrywide believes it has already addressed the major concerns raised by the Ukpes in connection with the initial discovery responses and produced or directed the Ukpes to responsive documents identified in the Ukpes' loan records, including those concerning the origination and servicing of their loan and the ownership of the loan by the trust at issue.  The remainder of the Ukpes' specific issues raised in their October 2, 2009 letters are addressed below.

## 2. Countrywide's Submission of Joint Discovery Responses Was Proper And Complies With All Applicable Rules.

The Ukpes' assertion that Countrywide improperly submitted joint initial disclosures and joint responses to certain discovery requests is entirely misplaced and based on their mischaracterization of the entities they have sued.  *See, e.g.*, *Ukpes Oct. 2 Ltr. re: CHLI* at 3; *Ukpes Oct. 2 Ltr. re: CHLS* at 3.  While the Ukpes claim to have sued three separate Countrywide entities, two of those entities—AWL and CHLI—are one and the same.  AWL is nothing more than a d/b/a name for CHLI.  Accordingly, there is no distinction (legal or otherwise) between those two named defendants.  Yet, despite Countrywide's reminding Ukpes' counsel of this fact, they insist on acting as if AWL and CLHI are separate defendants subject to distinct obligations.

The third Countrywide entity named in the Ukpes' complaint is CHLS,[10] the servicer of the Ukpes' loan.  While it is true that CHLS is a distinct legal entity from CHLI, the two companies are affiliates.  And importantly, CHLI and CHLS have access to the same servicing and loan records and information with respect to the Ukpes' loan.  As a result, the information available to each entity concerning the Ukpes' loan is the same, and it should not be surprising (let alone objectionable) that discovery responses and initial disclosures produced by CHLS and CHLI are identical.

Countrywide has explained as much to the Ukpes throughout this litigation.  Nonetheless, the Ukpes continue to insist that Countrywide should be forced to reproduce separate responses for each of the Countrywide entities named as a third-party defendant in this lawsuit, even though the responses would be identical.  Such an exercise would provide no additional information to the Ukpes, and would serve no purpose other than to increase the burden on Countrywide.  Under these circumstances, the Ukpes' demand for separate responses should be rejected.  *See, e.g.*, Wright & Miller, Federal Practice and Procedure: Civil 3d § 2172 at 283 ("If identical interrogatories are submitted to several parties, they may designate one of their number to answer for all of them," and all be bound by the answers.); *see also Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 165 (N.D. Ohio 1964) (overruling defendant's objection to the appointment of one plaintiff as an agent for the other plaintiffs for purposes of responding to identical sets of discovery).

---

[10]   On April 27, 2009, CHLS's name was changed to BAC Home Loans Servicing LP. Nonetheless, for ease of reference, the term CHLS is used throughout this submission.

Hon. Joel Schneider
October 9, 2009
Page 6

Similarly, the Ukpes' claim that Countrywide's discovery responses were not properly verified is simply incorrect. Countrywide's responses (including the supplemental responses prepared in conjunction with the parties' meet and confer process) were verified by Devra Lindgren. Ms. Lindgren is an Assistant Vice President and Assistant Secretary of CHLI and an Assistant Secretary of CHLS. Accordingly, Ms. Lindgren's qualifications are unassailable under Rule 33.[11]

Finally, the Ukpes' claim that the responses are deficient because they did not indicate whether they were based on Ms. Lindgren's personal knowledge or another source of information have already been addressed by Countrywide. As noted in Countrywide's supplemental discovery responses, Ms. Lindgren's verification of the responses was based on Countrywide's business records identified in response to each Interrogatory.

### 3.    Countrywide's Privilege Log is Sufficient.

The Ukpes also take issue with the privilege log produced by Countrywide in this litigation—their concerns are baseless. It is worth noting that Countrywide has not withheld any documents in their entirety on the basis of any privilege. Rather, the only information at issue consists of servicing notes and communications referenced on Countrywide's loan servicing information pertaining to the Ukpes' loan, which was redacted from the versions of the documents produced.[12]

Countrywide's privilege log provides sufficient information to put the Ukpes on notice of the privilege asserted for each redacted entry, the basis for that privilege, and the facts sufficient to establish that privilege. Each entry on the privilege log references by bates number the relevant document on which the redacted information is found, and provides additional information

---

[11]   The Ukpes' complaint that Ms. Lindgren's verification does not comply with 28 U.S.C. § 1746 borders on the nonsensical. Section 1746 merely requires that a verification be "in substantially the following form" described by the statute. In fact, Ms. Lindgren's original verification met that standard, as does her verification of the supplemental interrogatory responses. Furthermore, in response to the Ukpes' request, Ms. Lindgren's supplemental verification clarifies that the information provided in the responses is based on Countrywide's business records, which are specifically identified in response to each Interrogatory, fully complying with Local Rule 33.1(b).

[12]   In order to preserve its rights, Countrywide did assert objections to various requests on the basis of "attorney client privilege, work product doctrine, or similar reason for non-production" but that assertion was often the result of the Ukpes' overbroad and unclear requests, which could be read to seek such privileged information. Except where noted on the privilege log, however, Countrywide has not withheld documents or information on the basis of that objection and no additional information is required on the privilege log. *See* Local Rule 33.1(c), 34.1. To the extent further investigation determines that additional documents would be responsive to the Ukpes' requests but are withheld or redacted on the basis of any privilege, Countrywide will amend its privilege log accordingly.

Hon. Joel Schneider
October 9, 2009
Page 7

concerning the Countrywide employee (if available) who entered the information on Countrywide's servicing system, the date of the communication, and the basis for the privilege.

Accordingly, Countrywide's privilege log satisfies its obligations with respect to the documents already produced or identified as responsive. And, to the extent further responsive documents are identified during discovery that Countrywide determines must be redacted or withheld based on the attorney-client privilege, work product doctrine, or similar reason for non-production, Countrywide will supplement and amend its privilege log as appropriate.

4. **Countrywide Has Provided Appropriate Information Concerning Its Employees.**

Throughout this litigation, Countrywide has explained to the Ukpes' counsel that a wide variety of employees may have information about the Ukpes' loan, but that many, if not most, of those employees would have very little information that would be relevant or useful in this litigation. Listing every such employee would simply be unreasonably burdensome on Countrywide, especially as the employees' names are contained in the various servicing and loan documents produced to the Ukpes. Countrywide has already specifically identified, and described what it believes to be the knowledge of, several employees associated with the Ukpes' loan, including those who played a role in the origination and underwriting process. *See Nardi Oct. 2 Ltr.* at 2. Furthermore, Countrywide has agreed to provide additional information (such as employment status and job titles) for any employees specifically asked about by the Ukpes. Finally, Countrywide agreed to designate and make available witnesses to provide deposition testimony pursuant to Rule 30(b)(6) on any appropriate topics noticed by the Ukpes.

Despite these steps, however, the Ukpes continue to complain that Countrywide has not provided sufficient information to satisfy its discovery obligations and even persisted in their demands for information about an individual who was never a Countrywide employee (Robert Childers, the Ukpes' mortgage broker) and for the personnel files for those employees already identified by Countrywide. The demands concerning Mr. Childers are simply frivolous, as he was never a Countrywide employee, and Countrywide has no information about Mr. Childers that is not equally known to the Ukpes. As for the demands for personnel files, the Ukpes have not even attempted to provide justification for the production of such documents, let alone a justification that would overcome the presumption that personnel files are not normally subject to production in a case like this. *See Prof'l Recovery Servs. v. GE Capital Corp.*, 2009 U.S. Dist. LEXIS 3889, at *11 (D. N.J. Jan. 15, 2009) ("personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case," requiring that "special care must be taken before personnel files are turned over to an adverse party.").

LIBW/1720648.4

Hon. Joel Schneider
October 9, 2009
Page 8

Thus, while Countrywide remains willing to continue to cooperate with the Ukpes in this regard, it does not believe that it is obligated to provide additional information concerning its employees at this time.[13]

### 5.    Countrywide Has Complied With Its Electronic Discovery Obligations.

The Ukpes' suggestion that Countrywide has failed to provide electronic discovery responses is simply incorrect.  As Countrywide has explained to the Ukpes (*see, e.g., Nardi Oct. 2 Ltr.* at 3), the vast majority of the information that Countrywide has produced has consisted of electronic documents.  Countrywide's loan records, including its servicing records and origination files, are maintained electronically and were produced to the Ukpes in the format agreed to by the parties for electronic production in this case.  And as noted elsewhere, in addition to the documents that have already been produced, Countrywide is continuing its investigation to search for any further emails or electronic records that may exist and be relevant to the Ukpes' loan and their claims in this case.  If any such responsive electronic documents are located, Countrywide will, of course, produce them immediately.

Nonetheless, the Ukpes contend that Countrywide has failed to comply with electronic discovery by not producing, among other things, electronic records concerning the "transfer of the Ukpes' note," the "assignment of the Ukpes' mortgage," and the "specific PSA loan schedules."  *See, e.g., Ukpes Oct. 2 Ltr. re: CHLI* at 7.  But Countrywide has not refused to produce such records, to the extent they exist.  In fact, Countrywide and the other parties to this litigation have already produced records showing that the Ukpe loan was transferred to the trust and that the mortgage was assigned to the trust.  *See, e.g.,* CW-UKPE 1524-25; BONY 40-42, 342-369, 555-779, 780-81.  To the extent the Ukpes continue to demand duplicative copies of previously produced information or to speculate that there is further information that has not been produced, their concerns are baseless.  Especially in light of Countrywide's obligation and agreement to produce any additional responsive electronic documents that may be identified through its continuing investigation or further discovery, the Ukpes' arguments in this area should be rejected.

---

[13]    Countrywide specifically notes that the Ukpes' complaint about its response to Interrogatory 24 (seeking the identification of all witnesses intended to be used at trial) is particularly misplaced.  Countrywide did not refuse to answer that Interrogatory.  Rather, in light of the fact that, at this early stage of the case, it is simply impossible to determine what issues will be presented at trial and what witnesses will be required, Countrywide said it will provide such information at a later date "in compliance with applicable rules."  The Ukpes' demand notwithstanding, it was entirely appropriate for Countrywide to commit to disclosing "all witnesses and/or experts pursuant to the requirements of Federal Rules of Civil Procedure, the Local Rules, or any applicable order of this Court."  *See Countrywide's Aug. 31, 2009 Interrogatory Response* 24.

LIBW/1720648.4

Hon. Joel Schneider
October 9, 2009
Page 9

6. **Countrywide Should Not Be Required to Further Respond to the Ukpes' Remaining Requests.**

The Ukpes' complaint that Countrywide has failed to produce documents responsive to several document requests ignores the fact that the requests at issue seek documents that are either irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, or are purely duplicative or unnecessary in light of those documents that have already been produced. Countrywide responds to the main categories of documents at issue in turn:

**Policy Documents**

The first category of irrelevant documents sought by the Ukpes concern Countrywide's policies, procedures, and training materials.[14]  Such documents are routinely at issue in class actions, where the facts of an individual plaintiffs' case are to be applied across a class of similarly' situated parties.  There are no class allegations in this case, however.  The only loan at issue is the Ukpes', and the only information relevant to the claims raised concerns what Countrywide did with respect to the Ukpes' loan.  How Countrywide trains or instructs its employees to act with respect to other loans is irrelevant to what actually happened to the Ukpes.  Indeed, even if Countrywide acted in direct contravention of its normal policies and procedures, that would not give rise to any claim by the Ukpes.  *See In re Consol. Fen-Phen Cases, 2003 U.S. Dist. LEXIS 20231*, *20 (E.D.N.Y. Nov. 12, 2003) (it is well-established that an obligation arising from an internal company policy "will generally not give rise to tort liability in favor of a third party"); *see also Ayers v. Osram Sylvania, Inc.*, 2008 U.S. Dist. LEXIS 72644, * 16 (M.D. Pa. Sept. 24, 2008) (breach of a corporate policy is not sufficient to state a claim); *Wallender v. Sampson*, 1996 U.S. Dist. LEXIS 9163, *12 (S.D.N.Y. June 27, 1996) (internal corporate policy cannot create a duty such that a cause of action for negligence could be stated).  Accordingly, the policy and training materials sought by the Ukpes have no probative value in this litigation and Countrywide properly objected to their production.

**MERS Documents**

The second group of documents are Countrywide's contracts with MERS and the documents that generally govern Countrywide's relationship with MERS.[15]  Once again, while such documents may play a role in class litigation concerning Countrywide's overall handling of MERS-related loans, they are irrelevant to the instant case.  The only potentially relevant facts concerning MERS's role are those directly applicable to the Ukpes' loan.  Countrywide has already produced documents establishing that MERS was the nominee on the loan and other documents have been produced concerning MERS's authorization of PHS to effectuate the transfer of

---

[14]   *See, e.g.*, AWL Document Requests 15 and 34.

[15]   *See, e.g.*, CHLI Document Request 101; CHLS Document Request 101.

Hon. Joel Schneider
October 9, 2009
Page 10

MERS's rights to the trust in this case.  The additional documents sought by plaintiffs are simply irrelevant, and Countrywide properly objected to their production.[16]

### Other PSA-Related Documents

The broadest category of irrelevant documents sought by Plaintiffs concerns ancillary documents relating to the PSA and trust associated with the Ukpes' loan, which were sought despite the fact that the PSA itself and the documents demonstrating the Ukpes' loan was part of the trust have already been produced.[17]  During the meet and confer process, the Ukpes' counsel explained that such documents, including prospectuses, opinions of counsel, investor certificates, claims on the applicable mortgage insurance policy, and the like, were relevant to their ultimate claim that the Ukpes' loan was not part of the trust at issue.  Such documents were necessary and relevant, they argued, because discovery had not resulted in the production of the PSA, loan schedules, and the endorsed copy of the Ukpes' note.

Putting aside the accuracy of the argument that those documents had not already been produced or that the ancillary documents would be relevant to the Ukpes' claim, the Ukpes' stated need for the additional documents does not justify the burden of producing them.  Countrywide has identified to the Ukpes those documents that have been produced in this litigation that constitute the PSA (BONY 555-779), the relevant loan schedules (BONY 342-369), the endorsed note (BONY 40-42), and other records demonstrating that the Ukpes' loan was, in fact, part of the trust at issue (*e.g.*, BONY 780-81; CW-UKPE 01004-01088, 01184-01203).  In light of those documents produced, any probative value of the ancillary documents sought by the Ukpes is severely diminished, and does not justify the burden associated with their production.[18]

### Documents Concerning Other Litigation

Similarly, the Ukpes' demands for documents concerning other lawsuits and litigation involving Countrywide and/or the trust that owns the Ukpes' loan have no bearing on this case.  The Ukpes' individual claims will rise and fall with the information concerning what happened with their loan.  Whatever allegations other plaintiffs in separate cases may have raised, they are

---

[16]   Similarly, the Ukpes' demand for contracts and agreements between Countrywide and other outside parties (*see, e.g.*, AWL Document Request 8) is irrelevant to their individual claims of what <u>Countrywide</u> did in connection with their loan.

[17]   *See, e.g.*, CHLI Document Requests 28-32, 36-38, 43, 47-48, 50, 54-55, 57-59, 64; CHLS Document Requests 28-32, 37-38, 43, 47-48, 50, 54-55, 57-59.

[18]   Notably, even if the documents did have some probative value, to the extent they are publicly available (*see, e.g.*, CHLI Document Requests 28-29 (seeking prospectuses)), Countrywide should not be required to produce them to the Ukpes.  *See Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 2008 U.S. Dist. LEXIS 72705, *14 (D. N.J. Aug. 27, 2008) (finding that publicly available materials "do not need to be produced during discovery in order for Plaintiff to obtain them").

Hon. Joel Schneider
October 9, 2009
Page 11

obviously not probative on the Ukpes' efforts to prove that Countrywide acted improperly with respect to their loan. *EEOC v. Morales*, 2008 U.S. Dist. LEXIS 105649 (E.D. Cal. Dec. 22, 2008)

Aside from the documents outlined above, the Ukpes seem to have unspecified concerns with Countrywide's production of documents in response to the remaining requests. But those concerns are either frivolous (*see, e.g.*, AWL Document Request 16 (seeking employment information for non-Countrywide employee Childers)) or have already been addressed (*see, e.g.,* AWL Document Request 8 (contracts between AWL and outside vendors)). Countrywide welcomes the opportunity to discuss those, and any other concerns raised by the Court or the other parties to this litigation in an effort to resolve the remaining issues.

*    *    *    *

In light of the foregoing, Countrywide respectfully submits that it has complied, and is complying, with its discovery obligations under the rules, and that the Ukpes' continued demands for duplicative, irrelevant, and overly burdensome discovery should be rejected.

Respectfully submitted,


   /s/ Sean T. O'Meara
Sean T. O'Meara, Esq.
ARCHER & GREINER, P.C.

Scott B. Nardi, Esq. (*pro hac vice*)
Richard A. Oetheimer, Esq. (*pro hac vice pending*)
GOODWIN PROCTER LLP

Attorneys for Countrywide Third-Party Defendants


cc:    Abigail Sullivan
       Mark J. Malone
       James F. Villere, Jr.
       Dashika Wellington
       Sean O'Meara

11