# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC., | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 09-1710 |
| v. | : | |
| VICTOR UKPE and ENOABASI UKPE, | : | MEMORANDUM OPINION & ORDER |
| Defendants/Third-Party Plaintiffs, | : | |
| v. | : | |
| AMERICA'S WHOLESALE LENDER, COUNTRYWIDE HOME LOANS, INC., MORGAN FUNDING CORP., ROBERT CHILDERS, COUNTRYWIDE HOME LOANS SERVICING LP, PHELAN HALLINAN & SCHMIEG, PC, | : | |
| Third-Party Defendants. | : | |

This matter is before the Court on a motion to remand pursuant to 28 U.S.C. § 1441(c) filed by Defendants Victor and Enoabasi Ukpe. The Court heard oral argument on the motion on October 14, 2009, and the record of that proceeding is incorporated here. For the reasons expressed on the record that date, as well as those articulated below, the motion to remand will be granted.

## Factual Background

In ruling on whether a cause of action should be remanded to the state court from which it was removed, the court must assume as true all factual allegations in the plaintiff's complaint. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987), cert. dismissed sub nom. Am. Standard, Inc. v. Steel Valley

<u>Auth.</u>, 484 U.S. 1021 (1988) (internal citations omitted);[1] <u>see</u> <u>also</u> <u>Abels v. State Farm</u>

<u>Fire & Cas. Co.</u>, 770 F.2d 26, 29 (3d Cir. 1985) (citing <u>Pullman Co. v.  Jenkins</u>, 305 U.S.

534, 537 (1939) (stating that defendant's right to remove is determined from the

plaintiff's pleading at the time of removal)).

Plaintiff Bank of New York as Trustee for the Certificate Holders CWABS, Inc.

filed a two-count Foreclosure Complaint against the Defendants, husband and wife, in

the Superior Court of New Jersey, Chancery Division, Atlantic County on March 13,

2008.  Through its attorneys, Phelan Hallinan and Schmieg, P.C., Plaintiff sought a

determination of the amount due on a July 29, 2005 note that Defendants executed to

America's Wholesale Mortgage to secure a $224,000 purchase money mortgage on their

home located at 717 S. Seventh Avenue, in Galloway, New Jersey, along with possession

of the Galloway property.  On or about April 25, 2008, Defendants filed an Answer,

Affirmative Defenses, and Counterclaims in State court.  Defendants also filed, but

allegedly did not serve, a Third Party Complaint on or about October 24, 2008.

Specifically, it was alleged that Mr. Ukpe met Third-Party Defendant Robert

Childers early in 2005, when he gave Childers a ride in his taxi cab.  At the time,

Childers was a broker for Third-Party Defendant Morgan Funding Corporation.

Childers represented that he could assist Mr. Ukpe in obtaining a loan to purchase a

home; for fifteen years prior to that time, the Ukpes had rented a home for their family,

which at the time included five children under the age of ten.  Based on the Ukpes' credit

---

[1] <u>Steel Valley</u> was later superseded by statute on other grounds.  <u>See Shaw v. Unum Life Ins. Co. of Am., Inc.</u>, No. 88-4637, 1989 WL 52713, at *6 (D.N.J. May 15, 1989) (internal citations omitted).

2

scores and income, Childers sent the Ukpes a pre-approval letter, indicating that they could obtain a conventional mortgage from Morgan Funding Corporation for up to $152,000.

The Ukpes determined that they could not find a home large enough for their family for under $152,000, but they found a home they liked for $224,000. They allege that Childers encouraged them to consider houses priced at more than their pre-approved $152,000 because they had "good credit." Indeed, Childers obtained a mortgage for the Ukpes from America's Wholesale Lender. The Ukpes were informed that they could put down just $1,000 to buy their house, but they allegedly were not informed that they could increase their down payment to lessen their mortgage.

America's Wholesale Lender allegedly sent the Ukpes mortgage applications, which were mostly blank, and informed them that they should sign and date the documents. Later, the Ukpes discovered that the applications allegedly were falsified to represent that their income was $9,000 per month.

Mr. Ukpe states he was concerned when he received notice that the interest rate on his mortgage would be 8.225%, but Childers allegedly assured him that the interest rate would be less at closing. Shortly before that time, Mr. Ukpe was informed that he would have a variable interest rate for the first three years, and then an interest rate of 7.975%; but after closing, he learned that they had an interest-only loan for three years, and then an adjustable rate mortgage. The Ukpes sought to rescind the loan, but allegedly were persuaded by Morgan Funding and Childers that if they maintained three months of good payments, they would be financed into a lower fixed interest rate. When they called America's Wholesale Lender after three months, however, they were told that

3

they had to be with the lender six months before they could refinance.  After six more months, the Ukpes allegedly were told they had to wait another year before refinancing.  At about the same time, the Ukpes were informed that Childers had been fired from Morgan Funding.

Additionally, the Ukpes had been informed that taxes were being escrowed as part of their monthly mortgage payments, but initially they allegedly were not.  As such, the Ukpes fell behind in their taxes, and were then informed that their monthly mortgage payments would increase by $900 to allow for escrow funding.  They were then unable to maintain their mortgage payments.

The Truth In Lending Act (TILA) counterclaim alleged that the disclosures provided to the Ukpes misled them by providing a thirty-year amortization schedule at an interest rate of 8.5%.  The Ukpes also alleged they were not given the mandated Right-to-Cancel documents.  Moreover, they alleged they were discriminated against on the basis of race, as they are Nigerians, because they allegedly qualified for a loan with better terms.  Finally, they alleged that Morgan Funding was paid yield spread premiums, origination, and other fees that it arguably should not have been.

In the Third Party action, the Ukpes alleged common law fraud, consumer fraud, unconscionability, violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 (RESPA), the Fair Housing Act, 42 U.S.C. § 3601 (FHA), and the Equal Credit Opportunity Act 15 U.S.C. § 1691 (ECOA), negligent misrepresentation, and negligent lending by various Third-Party Defendants in obtaining a mortgage for the Ukpes.  The Amended Answer, Affirmatives Defenses, Counterclaims, and Amended Third Party Complaint was filed in State court on or about March 11, 2009.  It alleged, among other

4

things, common law fraud, consumer fraud, unconscionability, and that Bank of New York failed to comply with New Jersey's Fair Foreclosure Act and Fair Consumer Act. It also alleged as bases for the Third-Party Complaint, among other grounds, common law fraud, unconscionability, negligent lending, violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 (NJCFA), FHA, and ECOA. A Second Amended Answer, Affirmatives Defenses, Counterclaims, and Amended Third Party Complaint was filed in State court on March 20, 2009. It added the Phelan firm as a Third-Party Defendant and alleged, among other things, common law fraud, unconscionability, negligent lending, and violations of the NJCFA, FHA, ECOA, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

Several case management orders were entered by the Honorable William C. Todd III in State court, including an Order permitting the filing of the Third-Party Complaint. In addition, Judge Todd denied the Plaintiff's motion for summary judgment to strike the Ukpes' Answer on November 26, 2008. Judge Todd again denied summary judgment on January 21, 2009, based upon argument that the the Ukpes' mortgage and note to Plaintiff had been falsely notarized. Pursuant to Judge Todd's Orders, an Amended Third Party Complaint was filed on or about March 10, 2009.

The State court judge had ordered additional discovery and a plenary hearing to determine issues regarding allegedly false acknowledgments relied upon by the Phelan law firm in pursuing the foreclosure, as well as potential conflicts of interest in the assignment of the mortgage and note upon which the foreclosure action is based; he scheduled the hearing for April 20, 2009. Specifically, Defendants had argued that the foreclosure complaint was based on a fraudulent assignment of a mortgage note from

5

Mortgage Electronic Registration Systems, Inc. to Plaintiff.  It was argued that Francis Hallinan, a partner at the Phelan firm, executed the assignment in his capacity as a MERS officer, while the Phelan firm was a vendor to MERS, the assignor; the Phelan firm also represents the Plaintiff in this foreclosure action, as well as the mortgage servicer, Countrywide Home Loans Servicing, LP.  The three Phelan firm named partners, including Hallinan, own Full Spectrum Holdings, which is comprised of Full Spectrum Legal Services, Inc. (FSLS) and Land Title Services.  The in-house notary for FSLS, Thomas Strain, testified during deposition that over the previous three years, he falsely acknowledged tens of thousands of mortgage assignments for the Phelan firm, including the assignment in this case.  Defendants sought a remedy in State court for the allegedly fraudulent assignment and conflicts of interest.

On April 9, 2009, Third-Party Defendants America's Wholesale Lender, Countrywide Home Loans Servicing LP, and Countrywide Home Loans, Inc. filed a Notice of Removal based upon 28 U.S.C. §§ 1331, 1441(a), and 1446(a).  They asserted that "[t]his case arises under the laws of the United States because the FHA and ECOA are laws of the United States, and the Ukpes expressly seek relief against the Countrywide Defendants in the Second Amended Third Party Complaint for alleged violations of the FHA and ECOA."  (Notice of Removal, p. 4.)  The removing Third-Party Defendants also argued that the claims against them are separate and independent from the main cause of action whereby Plaintiff seeks to foreclose on the Defendants' mortgage due to nonpayment of amounts due under the note.  They argue that the original Complaint "is solely based on the collection rights under the mortgage," whereas the third-party action "concern[s] exclusively the origination and set-up of the Ukpes' loan."  (Id. at p. 5.)

On April 24, 2009, Defendants/Third-Party Plaintiffs Victor and Enoabasi Ukpe filed a motion to remand this matter back to State court.  They argue that the third-party action "aris[es] out of the same common nucleus of facts involving the mortgage loan transaction."  (Def. Br. in support of m. to remand, p. 4.)  Since the Notice of Removal was filed almost 13 months after the initial foreclosure pleading and just short of one year after the Defendants filed an Answer and Counterclaim asserting federal question claims, the Ukpes argue that the removal is untimely and violative of the well-pleaded complaint rule.  In addition, the Third-Party Plaintiffs argue that their counter- and third-party claims are not separate and independent from those originally asserted against them, and State law predominates all matters involved.

## Standard of Review

A case must be remanded if, at any time before final judgment, the district court discovers that it lacks subject matter jurisdiction to hear the case.  See 28 U.S.C. § 1447(c).  As the party removing the case, the defendant has the burden to prove that federal court jurisdiction is proper at all stages of the litigation.  See Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); Abels, 770 F.2d at 29.  The district court must resolve all contested issues of fact and uncertainties of law in favor of the plaintiff.  See Boyer, 913 F.2d at 111.  Moreover, the court should strictly construe removal statutes and resolve all doubts in favor of remand.  See Abels, 770 F.2d at 29.  The strict construction of removal statutes honors Congress' power to determine the contours of the federal court's limited subject matter jurisdiction.  See Bowles v. Russell, 551 U.S. 205, 212-13 (2007) (internal citation omitted) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.").

In order for removal to be proper, the federal court must have original jurisdiction to hear the case.  <u>See</u> 28 U.S.C. § 1441(a); <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 383, 389 (3d Cir. 2002).  One basis of original jurisdiction is federal question jurisdiction.  <u>See</u> 28 U.S.C. § 1331; <u>U.S. Express</u>, 281 F.3d at 389.  Federal question jurisdiction applies to "all civil actions arising under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331.  If the federal court has original jurisdiction based upon federal question, the case may be removed without regard to the citizenship of the parties.  <u>See</u> 28 U.S.C. § 1441(b).  One claim conferring federal question jurisdiction is sufficient for the entire case to be removed to federal court.  <u>See</u> <u>id.</u> § 1441(c).  The district court, however, may exercise its discretionary powers to remand all matters to state court in which state law predominates.  <u>See</u> <u>id.</u>

Next, the well-pleaded complaint rule requires that the face of the plaintiff's complaint provide the basis for federal question jurisdiction by raising issues of federal law.  <u>See</u> <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 163 (1997).  Federal jurisdiction cannot arise from a defense that raises a federal question.  <u>See</u> <u>Merrell Dow Pharm. Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986).  The basis for federal question jurisdiction must exist within the four corners of the complaint.  <u>See</u> <u>id.</u>  In light of the presumption in favor of remand, district courts should remand close or doubtful cases to the state courts from which they were removed.  <u>See</u> <u>Abels</u>, 770 F.2d at 29.  Remand to state court avoids a later determination that the federal court is without jurisdiction, and places the case in a forum having clear jurisdiction over the case.  <u>See</u> <u>id.</u> (internal citation omitted).

When a federal issue is embedded in a state law claim, the federal court has jurisdiction over the claim when it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  Only a "slim category" of state law claims satisfy this test.  See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006).  The federal interest must be substantial enough to justify turning a state law claim "into a discrete and costly 'federal case.'"  See id.

## Discussion

As the removing party bears the burden to prove federal subject matter jurisdiction exists, the appropriate starting point in considering a motion to remand is the defendant's contentions supporting removal.  See Samuel-Bassett, 357 F.3d at 396; Boyer, 913 F.2d at 111; Abels, 770 F.2d at 29.  The Countrywide Third-Party Defendants have argued that the original foreclosure complaint is separate and distinct from the claims asserted against them regarding the origination of the Ukpes' loan.  The Third-Party Defendants also have argued that the March 20, 2009 Second Amended Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint was the only Third-Party Complaint properly served on Countrywide Home Loans, Inc. and America's Wholesale Lender.  Accordingly, the April 9, 2009 Notice of Removal was timely.

Congress did not confer removal jurisdiction on federal courts for third-party defendants.  In addition, the issue of whether a third-party defendant may remove an action has not been addressed by the United States Supreme Court or by the United States Court of Appeals for the Third Circuit.

The majority of courts analyzing this issue have decided that a third-party defendant is not empowered to remove a case.  See, e.g., Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385, 388-89 (D.N.J. 1999) (Judge Hayden adopting the report and recommendation of former Magistrate Judge Hedges who followed majority view that third party may not remove under § 1441); Kaye Associates v. Board of Chosen Freeholders of Gloucester, 757 F. Supp. 486, 487-89 (D.N.J. 1991) (in context of removal based on diversity jurisdiction, Chief Judge Gerry concluding that third-party defendants have no right to remove under section 1441).

These courts have found that "third-party defendants are not proper parties for removal because they are not 'defendants' under § 1441(a) and/or because § 1441(c) only applies to claims joined by plaintiffs."  Kaye, 757 F. Supp. at 487.  They also have noted that allowing removal by third-party defendants would conflict with other well-established rules regarding removal.  Id. at 488 (cases cannot be removed solely on the basis of a defendant's counterclaim, removability is determined by the initial pleadings filed by the plaintiff, and a case nonremovable on the initial pleadings can become removable only pursuant to a voluntary act of the plaintiff).  The majority of courts also have reasoned that the legislative history of the statute indicates that the section was not intended to extend the right of removal to third-party defendants.  Id. at 489 ("Looking at that legislative history, it seems clear that the intent of § 1441(c) was to ensure that the plaintiff cannot preclude the right to remove a removable claim through the device of joining a wholly separate and independent nonremovable claim.") (internal quotations and citation omitted).

The minority rule is that third-party defendants may remove State claims to federal court where the third-party claims are "separate and independent" from the main cause of action.  <u>See, e.g.,</u> <u>Hackensack Univ. Med. Ctr. v. Lagno</u>, Civil Action No. 06-687, 2006 WL 3246582, at *4-5 (D.N.J. Nov. 3, 2006) (Judge Cavanaugh finding that third-party claim may serve as basis for removal under section 1441(c), but ultimately remanding because removal was impermissible absent "separate and independent" indemnification and violation of ERISA third party claims); <u>Patient Care, Inc. v. Freeman</u>, 755 F. Supp. 644, 649-50 (D.N.J. 1991) (Judge Debevoise concluding that third-party defendant may properly remove "separate and independent" claim asserted against it to federal court pursuant to section 1441(c), but ultimately remanding case because third-party claim for indemnification was not "separate and independent" claim).

These courts have noted that § 1441(c) does not provide that *only* claims joined by the plaintiff may be removed.  <u>Patient Care</u>, 755 F. Supp. at 649 ("Construing § 1441(c) to include only claims joined by the plaintiff inserts qualifying language into the statute not placed there by Congress." (quoting <u>Ford Motor Credit Co. v. Aaron-Lincoln Mercury, Inc.</u>, 563 F. Supp. 1108, 1112 (N.D.Ill. 1983))).  The minority-view courts further recognize that a third-party defendant "never voluntarily submitted itself to the jurisdiction of the state court" but instead is "dragged into state court by service of process the same way that any other defendant is brought into court" and "is as much a defendant as if the case had been originally brought against it."  <u>Id.</u> (quoting <u>Ford Motor Credit</u>, 563 F. Supp. at 1113 (footnotes and internal quotations omitted)).  Finally, "removability under 28 U.S.C. § 1441(c) cannot rationally be made to depend on the accident of who sues first . . . ."  <u>Bond v. Doig</u>, 433 F. Supp. 243, 247 (D.N.J. 1977).

"The common ground between these two views is that removal should only be allowed for claims that are, in the language of Section 1441(c), 'separate and independent' from the main cause of action." <u>Lagno</u>, 2006 WL 3246582, at *4 (citing <u>Patient Care</u>, 755 F. Supp. at 650). The Supreme Court has held that claims are not separate and independent "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions." <u>American Fire & Casualty Co. v. Finn</u>, 341 U.S. 6, 14 (1951). If the third-party claim is "substantially derived from the same set of facts" as the non-removable main claim, it is not a "separate and independent" claim under Section 1441(c). <u>New Venture Gear, Inc. v. Fonehouse</u>, 982 F. Supp. 892, 893 (N.D.N.Y. 1997) (citing <u>Mignogna v. Sair Aviation, Inc.</u>, 679 F. Supp. 184, 190 (N.D.N.Y. 1988); <u>Lewis v. Louisville & Nashville R. Co.</u>, 758 F.2d 219, 221 (7th Cir. 1985)). Claims by third-party defendants, especially those for indemnity, are rarely separate and independent from the main cause of action in removal cases. <u>See</u> <u>First Nat'l Bank v. Pulaski</u>, 301 F.3d 456, 465 (6th Cir. 2002) ("[E]ven in the courts holding that §1441(c) permits third-party defendants to remove to federal court, as a general proposition, those courts have often held that the third-party claims at issue did not satisfy the 'separate and independent' requirement of § 1441(c).").

In this case, the removal is defective because the Third-Party Defendants have failed to show how the allegations of the Ukpe Defendants regarding the fraudulent origination of the mortgage are separate and independent from the action to foreclose. The Ukpes' FHA and ECOA claims are among eight State consumer fraud and contractual issues that form the theory of the case regarding Plaintiff's right to foreclose as an assignee of the Third-Party Defendants.

12

While Plaintiff asserted a "single wrong" of nonpayment of the mortgage loan, the Ukpes allege that claim arises from "an interlocked series of transactions," beginning with an allegedly discriminatory subprime mortgage given by the Third-Party Defendants.  Thus, the collection rights under the mortgage are "derived from the same set of facts" controlling the allegedly discriminatory and predatory origination of the mortgage loan.  See Associates Home Equity Services, Inc. v. Troup, 778 A.2d 529, 540 n.5 (N.J. Super. Ct. App. Div. 2001) (predatory/discriminatory lending counterclaims and third-party claims—which included claims under the NJCFA, FHA, and TILA—are "germane" in state foreclosure actions).  In other words, the Ukpes may not have defaulted on the loan had they not been induced to secure a loan for which they were not financially qualified.  Additionally, although the Ukpes' recovery from the Third-Party Defendants is not dependent upon the success of the underlying foreclosure action, the converse may be true--if the Ukpes succeed in their third-party action, they may be entitled to recision of the loan, thus voiding their indebtedness to Plaintiff.  As such, the third-party claims are not sufficiently separate and independent from the original action as required for removal under Section 1441(c).  Analysis under either the majority or the minority view results in a finding that removal was not authorized by law.  Accordingly, the motion to remand is granted.

As a final matter, the Ukpes have requested counsel fees in pursuing this motion, but because the law in the Circuit is unsettled, an award of fees would not be appropriate.  See Roxbury Condo. Ass'n, Inc. v. Anthony S. Cupo Agency, 316 F.3d 224, 228 (3d Cir. 2003) (reversing award of attorney's fees because Third Circuit had not "decided whether an indemnification claim is separate and independent or whether a third-party defendant may properly remove under § 1441(c)").

13

**Conclusion**

For these reasons, as well as those expressed on the record during oral argument,

IT IS ORDERED on this 9th day of December, 2009 that the motion to remand

pursuant to 28 U.S.C. § 1441(c) filed by Defendants Victor and Enoabasi Ukpe [6] is

hereby <u>GRANTED</u>.

 /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
U.S.D.J.